1

2

3

4        UNITED STATES DISTRICT COURT

5        NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREW LOPEZ,                          Case No. 24-cv-04212-HSG

8              Plaintiff,                   **ORDER OF PARTIAL SERVICE**

9        v.

10   RONNEBERG, et al.,

11             Defendants.

12

13         Plaintiff, an inmate currently at San Quentin Rehabilitation Center ("SQRC"), has filed a

14   *pro se* action pursuant to 42 U.S.C. § 1983.  In this order, the Court screens Plaintiff's complaint

15   (Dkt. No. 1) pursuant to 28 U.S.C. § 1915A.  Plaintiff has paid the filing fee.  Dkt. No. 5.

16                                   **DISCUSSION**

17   **A.    Standard of Review**

18         A federal court must conduct a preliminary screening in any case in which a prisoner seeks

19   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

20   § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims

21   that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek

22   monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),

23   (2).  *Pro se* pleadings must, however, be liberally construed.  *See United States v. Qazi*, 975 F.3d

24   989, 993 (9th Cir. 2020).

25         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

26   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not

27   necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the

28   grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

United States District Court
Northern District of California

While Rule 8 does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement does not suffice. *Id.* To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.    Complaint**

In Section II of the complaint, the following SQRC correctional officials are named as defendants: segreants Ronnenberg and Real; lieutenant Campbell; correctional officers Alvarado and Morales who were assigned to the SQRC gym; correctional officer Michael who was assigned to the SQRC "Mack Shack;" and correctional officers Dotts, Burns, and Malikian, who were assigned to SQRC Badger Unit. Dkt. No. 4 at 2. In the body of the complaint, Plaintiff identifies two additional defendants: Investigative Services Unit officer Pushilk and sergeant Giacomozzi.

As detailed below, the complaint alleges that Defendants retaliated against him on seven different occasions, and that defendants Malikian, Alvarado, and Morales were deliberately indifferent to him when defendants Alvarado and Morales moved the microwave and refrigerator to the gym loft and when defendant Malikian moved him to a fifth floor cell. Plaintiff also alleges that these acts of retaliation and deliberate indifference violated California's Bane Act.

**July 7, 2021 – defendant Ronnenberg**. On May 4, 2021, Plaintiff was transferred from Pelican Bay State Prison to SQRC. On July 7, 2021, defendant Ronnenberg called Plaintiff to the unit officer's desk, referred to Plaintiff as "the Lopez that filed 19 complaints against Officer Lee in Pelican Bay," and then told Plaintiff, "We won't be having that shit here! We won't be having that 602 filing shit! You got that!?" In late 2022, Defendant Ronnenberg transferred away from SQRC, presumably to another correctional facility.

**April 8, 2021 – defendant Michael**. On April 8, 2021, Plaintiff was on his way to his job when defendant Michael began loudly "disrespecting" Plaintiff. When Plaintiff told the nurse

United States District Court
Northern District of California

standing next to defendant Michael that he would call the nurse as a witness, defendant Michael told the nurse, "Now he's gonna 602 me for being racist." Defendant Michael then retaliated against Plaintiff by summoning Plaintiff to the Mack Shack for a search. Defendant Michael roughly searched Plaintiff and told him "Line up with the rest of the idiots, I got plenty of 602s against me – nothing ever happens, you think you're tough."

**September 2021 to October 2022 – defendants Morales and Alvarado**. Plaintiff was assigned to work as a clerk in the SQRC gymnasium. Plaintiff chose to work at a ground floor desk because he has a spinal/nerve condition that makes it painful to climb stairs. There is a microwave on the ground floor that Plaintiff used daily to make coffee and meals. Defendant Morales created a hostile work environment for Plaintiff because defendant Morales lacks social skills. In retaliation for Plaintiff trying to reason with defendant Morales, defendant Morales (1) prohibited Plaintiff from using the stationary bike despite Plaintiff receiving authorization from the SQRC gym coach, (2) prohibited Plaintiff from washing his clothes at work; (3) moved the microwave to the gym loft; (4) would not allow Plaintiff to make phone calls from the inmate gym phones yet allowed other inmates to make calls from the phone in the gym loft; (5) removed Plaintiff's book shelves; and (6) moved the refrigerator to the gym loft; and both defendants Morales and Alvarado replaced the good chairs in Plaintiff's work area with broken chairs and allowed theft of Plaintiff's work fan. On August 29, 2022, defendant Alvarado told other inmates that the reason the microwave had been taken was because Plaintiff had filed a grievance.

**August 19, 2022 – defendant Malikian**. On August 17, 2022, Plaintiff submitted a reasonable accommodation request, requesting that the microwave and refrigerator be moved back to the ground floor so that he could access them. On August 19, 2022, defendant Malikian ordered Plaintiff to move from his first floor cell to a fifth floor cell. Plaintiff protested the move, stating that he had serious spinal related injuries and that climbing stairs would cause him severe and unnecessary pain. A fifth floor cell requires Plaintiff to ascend and descend stairs between four to nine times a day (breakfast, work, shower, dinner, phone, appeal interviews, COVID tests, visits, legal mail pickup, etc.). Defendant Malikian responded, "Move or get a writeup," knowing that a writeup would affect Plaintiff's parole chances. On August 29, 2022, defendant Alvarado

United States District Court
Northern District of California

told other inmates that the reason Plaintiff had been moved to the fifth floor was because Plaintiff had filed a grievance.

**October 6, 2022 – defendant Dotts**.  On October 6, 2022, defendant Dotts denied Plaintiff his shower.  When Plaintiff threatened to file a grievance, defendant Dotts said "Since you're gonna 602 me – I'm gonna write you up."

**November 3, 2022 – defendants Dotts and Real**.  On November 3, 2022, when Plaintiff went to sign up for his worker call, defendant Dotts yelled at him: "Oh, it's you, the guy [who's] 602ing me.  You ain't getting shit!  Get the fuck out of here!  Get your ass to work!  You ain't getting a call."  Defendant Real did not discipline defendant Dotts, or otherwise address defendant Dotts' retaliatory behavior.  Defendant Real refused to let Plaintiff make his worker call.  Plaintiff asked defendant Real, "I'm not getting my worker call?  But all other workers are getting theirs – this is because of my 602?"  Defendant Real responded, "Yes."

**September 2023 to February 2024 – defendants Burns, Campbell, Pushlik, Giocomazzi**.  In late September 2023,  defendant Burns harassed Plaintiff on two separate occasions as follows.  After cell doors were locked and Plaintiff was in bed, defendant Burns summoned Plaintiff out of bed to report to the front of the cell for no reason.  The first time, defendant Burns asked Plaintiff about a blanket hanging on the outside tier bars of another cell, asking "What's this."  Plaintiff responded, "I don't know.  My cellie and I don't do that," meaning that Plaintiff and his cellie do not hang stuff on the bars.  The second time, defendant Burns simply stared at Plaintiff for ten seconds.  Plaintiff turned to return to his bed, and defendant Burns commented, "Nice boxers."  On October 4, 2024, defendant Burns again summoned Plaintiff to the cell front.  Plaintiff felt harassed and told defendant Burns that he was aware that defendant Burns had been kicked out of Alpine Unit and H Unit for harassing minorities, and Plaintiff would not tolerate defendant Burns' harassment and would be filing a grievance against defendant Burns. The same day, defendant Burns "(allegedly) rough drafted a disciplinary against [Plaintiff], charging that [Plaintiff] obstructed a peace officer in performance of their duty[ . . . specifically that] Plaintiff had a sheet covering the entire side of his bed, obstructing [defendant Burns'] view of [Plaintiff]."  This disciplinary report was false and was in retaliation for Plaintiff stating his

United States District Court
Northern District of California

intent to file a grievance regarding defendant Burns' harassment.  Defendant Campbell served as hearing officer on the disciplinary writeup.  Plaintiff escorted defendant Campbell to his cell to show that defendant Burns' allegation was false.  There is a barrier on Plaintiff's bunk that prevents him from hanging things from the bunk.  Upon seeing that the allegation was false, defendant Campbell looked around the cell and changed the violation to having too much property.  When Plaintiff attempted to redirect defendant Campbell to the falsity of defendant Burns' allegation, defendant Campbell told Plaintiff that she was doing Plaintiff a favor by reducing the charge from "disrespect" to "administrative."  The reviewing chief disciplinary officer found no disrespect.  Plaintiff appealed the disciplinary writeup and defendant Campbell's actions.  On February 21, 2024, defendant Pushilk came to Plaintiff's cell to take pictures of Plaintiff's property for defendant Campbell.  Defendant Pushilk refused to photograph the barrier on Plaintiff's bunk.  On March 1, 2024, defendant Giacomozzi told Plaintiff that defendant Campbell wanted Plaintiff's property reduced or Plaintiff would receive a disciplinary write-up.  Plaintiff asked defendant Giacomozzi, "Only me?" and defendant Giacomozzi responded, "For now." On March 6, 2024, defendant Giacomozzi issued Plaintiff a CDCR 128-B, informing that Plaintiff that if he did not downsize his property, he would receive a disciplinary writeup.  On March 13, 2024, defendant Giacomozzi visited Plaintiff's cell to ensure that Plaintiff had downsized his property.  No other inmates were directed to downsize their property despite many inmates having more property than Plaintiff.

The complaint seeks the following relief: declaratory relief, compensatory and punitive damages; fees and costs; and injunctive relief, including but not limited to enforcement of the rule of spoliation, specifically that CDCR should indefinitely retain all recordings related to his claims, including but not limited to audio, video, and phone related records and data.

**C.    Order of Partial Service**

Liberally construed, the complaint states a cognizable First Amendment retaliation claim against defendant Ronnenberg for his comments on July 7, 2021; against defendant Michael for searching Plaintiff on April 8, 2021 after Plaintiff stated that he would file a grievance against defendant Michael for disrespecting him; against defendants Morales and Alvarado for moving the

United States District Court
Northern District of California

microwave to the gym loft because Plaintiff filed a grievance; against defendant Malikian for moving Plaintiff to the fifth floor on August 19, 2022, for filing a grievance; against defendant Dotts for, on October 6, 2022, telling Plaintiff that he would issue Plaintiff a disciplinary violation because Plaintiff was going to file a grievance on him; against defendant Real for denying Plaintiff his worker call on November 3, 2022 because of his grievance activity; and against defendant Burns for issuing Plaintiff a disciplinary writeup on October 4, 2023, in response to Plaintiff stating that he would file a grievance against defendant Burns for harassment. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.") (footnote omitted).[1]

However, the First Amendment retaliation claims violate the joinder rule set forth in Fed. R. Civ. Proc. 20(a)(2).  Fed. R. Civ. P. 20(a)(2) provides that all persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  The upshot of these rules is that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Whether defendant Ronnenberg engaged in retaliatory behavior is a legal and factual question independent of whether the other defendants engaged in retaliatory behavior.  The alleged retaliation by the other correctional officials was in response to different incidents, and therefore did not arise out of the same series of transactions or occurrences.  Defendant Ronnenberg allegedly retaliated for Plaintiff's July 7, 2021 comments, whereas defendant Michael allegedly

---

[1] The complaint does not state a First Amendment retaliation claim against defendants Campbell, Pushilk, or Giacomozzi because there is no allegation that defendants Campbell, Pushilk, or Giacomozzi acted because of Plaintiff's protected activity.

United States District Court
Northern District of California

retaliated for comments made prior to the April 8, 2021 search, and defendants Morales and Alvarado allegedly retaliated for a grievance that was filed.  The alleged retaliatory acts arise out of separate occurrences.  Accordingly, the Court SERVES the claim against defendant Ronnenberg, and DISMISSES the claims against the remaining defendants.  This dismissal is without prejudice to Plaintiff filing separate civil rights actions raising his claims against the remaining correctional officers.  If Plaintiff wishes to pursue his claims against the other correctional officers, the Court offers the following guidance.  As directed by Fed. R. Civ. P. 20, in each action, a plaintiff should only sue regarding one transaction, occurrence, or series of transactions or occurrences, and should only name as defendants the individuals involved in the transaction, occurrence, or series of transactions or occurrences.

The complaint fails to state an Eighth Amendment claim against defendants Alvarado and Morales for moving the microwave and refrigerator to the gym loft or against defendant Malikian for moving Plaintiff to a fifth floor cell.  A prison official is deliberately indifferent to an inmate's serious medical needs, in violation of the Eighth Amendment if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference."  *Id.*  A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment.  *Toguchi*, 391 F.3d. at 1060.  The Court DISMISSES the Eighth Amendment claim against defendants Alvarado and Morales because Plaintiff's inability to use the microwave and refrigerator did not expose him to a substantial risk of serious harm.  The Court dismisses this claim with prejudice because amendment would be futile.  The Court DISMISSES the Eighth Amendment claim against defendant Malikian because housing Plaintiff on a non-ground floor cell did not expose him to substantial risk of serious harm.  There is no allegation that prison doctors or administration have determined that Plaintiff has a medical need to be housed on the first floor.  The fact that Plaintiff finds it painful to ascend and descend stairs does not establish that he faced a serious risk of substantial harm by not being housed on the first floor, and does not establish that defendant

7

Malikian was aware that Plaintiff faced a serious risk of substantial harm by not being housed on the first floor. Although it is possible that the deficiency in this Eighth Amendment claim against defendant Malikian could be cured, this claim also violates Fed. R. Civ. P. 20(a)(2)'s joinder requirement. This action is proceeding on the retaliation claim against defendant Ronnenberg. The Eighth Amendment claim against defendant Malikian does not arise out of the same incident as the First Amendment retaliation claim against defendant Ronnenberg, and the two claims do not have a common question of law or fact. This dismissal of this Eighth Amendment claim against defendant Malikian is without prejudice to Plaintiff filing a separate civil rights action raising this claim and correcting the identified deficiency.

The Court DISMISSES with prejudice Plaintiff's Bane Act claims. Cal. Civ. Code § 52.1, known as the Bane Act, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). The elements of a Bane Act claim are: (1) the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him; (3) the defendant injured the plaintiff to prevent him from exercising his constitutional right; (4) the plaintiff was harmed; and (5) the defendant's actions were a substantial factor in causing the plaintiff's harm. *Austin B. v. Escondido Union Sch. Dist.,* 149 Cal. App. 4th 860, 882 (2007) (citing California's model Bane Act instruction, CACI Instruction No. 3066). Here, there is no allegation that defendant Ronnenberg threatened or committed violent acts or that defendant Ronnenberg injured Plaintiff.

The Court DISMISSES Plaintiff's request for injunctive relief as vague, as it is unclear what injunctive action is sought. Moreover, defendant Ronnenberg is no longer a correctional officer at SQRC, meaning that any request for injunctive relief regarding defendant Ronnenberg would likely be moot. The Court DISMISSES Plaintiff's request for compensatory damages as Plaintiff has not suffered a physical injury. 42 U.S.C. § 1997e(e) (PLRA provides that prisoners may recover for mental or emotional injuries suffered while incarcerated only if they first show

1  physical injury).

2                                              **CONCLUSION**

3           For the reasons set forth above, the Court orders as follows.

4           1.      The following defendant(s) shall be served: former San Quentin Rehabilitation

5  Center sergeant Ronnenberg.

6           2.      Service on the listed defendant(s) shall proceed under the California Department of

7  Corrections and Rehabilitation's ("CDCR") e-service program for civil rights cases from prisoners

8  in the CDCR's custody.  In accordance with the program, the Clerk is directed to serve on the

9  CDCR via email at CDCR_OLA_Service_of_Process@cdcr.ca.gov the following documents: the

10  operative complaint (Dkt. No. 4), this order of service, a CDCR Report of E-Service Waiver form

11  and a summons.  The Clerk also shall serve a copy of this order on the Plaintiff.

12          No later than 40 days after service of this order via email on the CDCR, the CDCR shall

13  provide  the court a completed CDCR Report of E-Service Waiver advising the court which

14  defendant(s) listed in this order will be waiving service of process without the need for service by

15  the United States Marshal Service ("USMS") and which defendant(s) decline to waive service or

16  could not be reached.  The CDCR also shall provide a copy of the CDCR Report of E-Service

17  Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court

18  a waiver of service of process for the defendant(s) who are waiving service.

19          Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each

20  defendant who has not waived service according to the CDCR Report of E-Service Waiver a

21  USM-205 Form.  The Clerk shall provide to the USMS the completed USM-205 forms and copies

22  of this order, the summons, and the operative complaint for service upon each defendant who has

23  not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-

24  Service Waiver.

25          The Court DISMISSES the remaining defendants from this action without prejudice to

26  Plaintiff filing separate civil rights actions raising his claims against these correctional officers.

27  The Clerk is directed to TERMINATE from this action the following defendants: segreant Real;

28  lieutenant Campbell; correctional officers Alvarado, Morales, Michael, Dotts, Burns, and

United States District Court
Northern District of California

9

Malikian; and Investigative Services Unit officer Pushilk and sergeant Giacomozzi.  The Clerk is directed to send Plaintiff two copies of the Court's civil rights complaint form.

3.      The Court DISMISSES with prejudice the Eighth Amendment claim against defendants Alvardo and Morales and the Bane Act claim against all Defendants.

4.      As detailed above, the complaint states a cognizable First Amendment retaliation claim against defendant former San Quentin Rehabilitation Center sergeant Ronnenberg.

5.      In order to expedite the resolution of this case, the Court orders as follows:

a.      No later than 91 days from the date this order is filed, Defendant must file and serve a motion for summary judgment or other dispositive motion.  If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion is due.  A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[2]

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than 28 days from the date the motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment. Defendant shall file a reply brief no later than 14 days after the date the opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion.

6.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must

United States District Court
Northern District of California

---

[2] If Defendant(s) assert(s) that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendant(s) must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

7. All communications by Plaintiff with the Court must be served on Defendant's counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendant but once Defendant is represented by counsel, all documents must be mailed to counsel rather than directly to Defendant.

8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

9. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

United States District Court
Northern District of California

1    Any motion for an extension of time must be filed no later than the deadline sought to be

2    extended and must be accompanied by a showing of good cause.  Plaintiff is cautioned that he

3    must include the case name and case number for this case on any document he submits to the

4    Court for consideration in this case.

5    **IT IS SO ORDERED.**

6    Dated:   November 24, 2025

7

8    HAYWOOD S. GILLIAM, JR.
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California